## H. T. WHITSON v. JOHN BOSWELL, et al.

Middle Section. December 23, 1929.

Petition for Certiorari denied by Supreme Court, March 1, 1930.

Worth Bryant and Haile & Haile, of Cookeville, for appellant.
Holladay & Holladay, of Cookeville, for appellee.

FAW, P. J. Upon the averments of his original bill, the complainant H. T. Whitson sought to recover a judgment for the amount of a note for $275, with interest, attorney's fees and costs, against

the defendants named in the bill, who are described in the caption thereof as follows: "Murray Bailey and S. T. Hudson, a partnership formerly doing business under the trade name of Putnam Motor Company and subsequently under the firm name of the Nash Sales Company; A. G. Maxwell, John Boswell, J. N. Boswell and A. J. Boswell, all residents of Putnam county, Tennessee."

When the case was taken up for trial in the chancery court, the Chancellor announced, in substance, that he was incompetent to try the case by reason of his relationship to the defendant A. J. Boswell; whereupon the complainant asked and obtained leave to take a voluntary nonsuit as to A. J. Boswell, and the suit, as against A. J. Boswell was accordingly "dismissed without prejudice."

In and by his final decree, the Chancellor dismissed the bill in so far as it sought a recovery against the defendants John Boswell, J. N. Boswell and A. G. Maxwell, but, "awarded judgment" against Murray Bailey and S. T. Hudson for the sum of $275 principal, $9.62 interest, and $28.46 attorney's fees, making the full sum of $313.08, and for all the costs of the cause, except the cost of making A. G. Maxwell a defendant, which latter cost was adjudged against the complainant and his prosecution surety.

Complainant Whitson and the defendant Hudson each prayed, obtained and perfected an appeal to this court and has assigned errors here.

It is not claimed that the Chancellor erred in dismissing the bill as against John Boswell and J. N. Boswell. Defendant Murray Bailey made no defense below and has not appealed. The questions for decision are (1) whether the Chancellor erred in denying complainant Whitson a judgment, against defendant Maxwell, and (2) whether the Chancellor erred in awarding judgment in favor of complainant Whitson against defendant Hudson.

The case was tried in the chancery court on the oral testimony of witnesses heard before the Chancellor in open court, and the testimony of the witnesses, with exhibits thereto, was preserved by bill of exceptions.

After the trial, the Chancellor filed a written finding of facts as follows:

"Complainant Whitson and defendant Bailey were in partnership as dealers in automobiles. Some action of Bailey was unsatisfactory to Whitson, and Whitson decided to close the business. Whitson directed his bookkeeper to discharge the employees at the garage after paying them off, and instructed his attorney to notify Bailey that the business was closed and he, Bailey, was out of a job.

"Bailey was insolvent. Whitson went away from Cookeville, where the business had its headquarters, and remained away for

about a week, and the action detailed above was directed by telephone conversations with his bookkeeper and attorney.

"Defendant Maxwell was the father-in-law of Bailey, was in no way interested in the partnership business, but was much concerned in the welfare of Bailey, had secured for him and otherwise substantially assisted him in this business.

"After the return of Mr. Whitson to Cookeville, Maxwell became somewhat active in the matter of obtaining a settlement of the partnership matters, acting without any consideration whatever to him, but to aid his son-in-law. The business appeared to have been profitable, had continued for about one month, and some twenty to thirty automobiles had been sold, for most if not all of which notes had been taken for at least a portion of the purchase price. Some of these notes, and the one in question in this suit, had been endorsed by the company and by Whitson individually to some Bank or Acceptance Company dealing in automobile paper.

"Mr. W. M. Shanks, mutual friend of the parties, and a gentleman of the highest standing, at the time and now mayor of Cookeville, interested himself for the purpose of harmony, and out of good will to the contending parties, to aid in getting a settlement that should be mutually satisfactory, and save to the parties the expense and losses that would result from litigation and forced winding up of the partnership affairs, and to preserve their former friendly relations undisturbed if possible.

"As a result of this intercession on the part of Mr. Shanks and many visits to and fro between Mr. Whitson and Mr. Maxwell, carrying suggestions, offers, or information, an agreement was reached whereby Mr. Maxwell agreed to purchase the interest of Whitson in the partnership for S. T. Hudson. Mr. Hudson did not have any money, had never been in business for himself to any great extent, and at the time and for some three years and one day had been bookkeeper for Whitson, who was a dealer in lumber, manufacturer of timber products, and an active business man on a large scale for this country and section, and was also bookkeeper for the Cookeville (Putnam) Motor Co., the firm name of the Whitson and Bailey partnership. Hudson, while not the owner of property to any extent, was regarded by all the parties as an honest man, and of strict integrity in every way. Mr. Maxwell had confidence in him, and thought on account of his age and settled and steady disposition and character, that he would make a valuable partner for his son-in-law Bailey, who was a younger man and who seems to have been considered as somewhat irresponsible in business.

"It was understood by Mr. Whitson that Maxwell was buying for Hudson, and that Hudson was the principal in the obligations given him by Maxwell, and at the time the deal was agreed upon between Maxwell and Whitson, three notes for $500 each were executed on thirty, sixty and ninety days, and signed by Maxwell as security, with the understanding that Hudson was to sign the notes above the signature of Maxwell, and, with his signing, the deal was closed, or an agreement had been reached and consummated, whereby Hudson was to become the owner of the Whitson interest in the partnership concern. Mr. Maxwell acted as accommodation security for Hudson, and also became, with another, accommodation security for Hudson for $2500 which Hudson was putting into the business.

"Pending the negotiations leading up to the agreement, and while Mr. W. M. Shanks was active in bringing about a settlement, it became material for Mr. Maxwell to have definite knowledge of the status of the business, the books of the company being in possession of Mr. Whitson, and some suggestion of an audit was made, when Mr. Shanks suggested that he could take the books and make up a statement of assets and liabilities from the books, that while he was not an auditor or expert accountant, he could make a statement from the books, and would do so, and in the presence of Mr. Whitson did make out such a statement, which was furnished to Mr. Maxwell, this statement showing current accounts, bills, or notes, for which Putnam Motor Company was liable, with a schedule of its assets.

"This list so furnished Mr. Maxwell did not contain a list of the notes of the concern that had been endorsed to banks or discount concerns, and did not list the note involved in this suit, but otherwise was substantially a complete and accurate list of assets and liabilities of Putnam Motor Company. With this list in his possession, Mr. Maxwell made a proposition, either in person to Whitson, or conveyed to him by Mr. Shanks, that, in substance, Whitson was to take an automobile at an agreed price, the three five hundred dollar notes, have a transfer of certain notes to cover a loan of $2500 to the Putnam Motor Company, made by him and for which he held note, he to turn over his entire interest in the business to Maxwell or Hudson, and Mr. Maxwell to stand security for Hudson and Bailey or their company for the payment of all obligations owing by it or them at the time.

"Maxwell did not have in mind that he was securing the notes that had been discounted, or the note in question here, as these matters had not been specifically mentioned, and were not on the list of assets and liabilities furnished him. He knew

something of the customs and habits of automobile dealers in the section, and that it was a common practice to discount notes, with the endorsement of the dealers, but had no knowledge of the obligations of this character for which Putnam Motor Company was liable as endorser, nor of the note in question. Mr. Whitson had in mind that this liability was being assumed, but· does not say that the matter was specifically mentioned in the negotiations, his statement that Mr. Maxwell must have so understood it, being a matter of assumption or opinion, hardly competent as a statement of fact. So that the court must find that there was not a meeting of the minds upon this issue, and no specific agreement in the oral contract of sale and purchase, as to this item, unless it would be included by construction.

"The writing upon which this suit is based, which is here copied,

"Cookeville, Tennessee

"Whereas, H. T. Whitson and Murray Bailey have heretofore engaged in a business known as Putnam Motor Company and Motors. It being a co-partnership, and the said H. T. Whitson has sold his entire interest in said business. The said Bailey remaining in said business. It is hereby agreed that I, A. G. Maxwell, become security to the said H. T. Whitson, for the purpose of indemnifying the said H. T. Whitson against all liabilities of whatsoever kind, said company may owe, except the notes turned over to said Whitson.

"This November 14th, 1928.

Signed

"A. G. Maxwell.

"Witness:

"W. M. Shanks."

"was executed on the next day after the consummation of sale, according to the dates on the documents themselves that figured in the deal or on Nov. 14. It was presented to Mr. Maxwell and signed by him after having had a telephone conversation with Mr. Whitson in which he had been informed that there were some small items of garage charges or otherwise amounting as he assumed to some few dollars that had not been included in the list furnished him, and he signed it thinking that it related to the items that had been furnished him on the list with the additions that he had agreed to assume in the telephone conversation. It was executed, using the exact language of the witness Mr. Shanks, as an 'afterthought' and after the trade had been fully agreed upon, and was wholly unilaterial and without any consideration whatever, passing to Mr. Maxwell.

"The business was continued under the name of Nash Sales Company, but it was really a continuation of the Putnam Motor Company under a new name. Mr. Hudson bought into the Putnam Motor Company, and this is a liability of the Putnam Motor Company and of Mr. Hudson, the change in name would not relieve him, but Mr. Maxwell did not bind himself for this obligation in making the deal, as the minds of the parties did not meet in agreement, and I think his verbal agreement to stand as security at that time is not supported by a valuable consideration, and would not be enforcible at law for want of consideration and mutuality, yet this is being carried out, as contemplated at the time by him, and insofar as his mind assented.

"Maxwell is clearly not liable on the paper, as there was no consideration past, present or future passing to him, for its execution. There was no fraud practiced upon Maxwell; and he having signed the paper without a full realization of its broad scope, would not relieve him from liability, just as if he had signed without reading at all, having an opportunity to read it or have it read, he would be bound. It is broad enough and would have to be construed as covering the liability upon which it is sought to charge him, if based upon a consideration deemed good in law.

"June 8, 1929.

W. R. Officer,

Chancellor."

A written motion was filed and presented on behalf of complainant Whitson seeking to have the Chancellor "modify and change his written finding of facts" so as to find that there was a sufficient consideration to support the "written undertaking" of defendant Maxwell copied into the Chancellor's findings; but this motion was overruled and disallowed; and thereupon complainant filed a motion for a new trial on two grounds stated therein as follows:

(1) "There is no evidence to support the finding and decree of the court," and (2) "The evidence preponderates in favor of the complainant and against the defendant A. G. Maxwell, and against the decree of the court."

Defendant Hudson also filed a motion for a new trial, which contained six numbered paragraphs or grounds, the first of which is that, "there is no evidence on which to predicate a finding or decree against this defendant." The remaining five grounds of defendant Hudson's motion fall within the scope of the first ground thereof above quoted and need not be stated at this time.

Both of said motions for a new trial were overruled, and the Chancellor pronounced judgment as before stated. In his original bill,

the complainant demanded "a jury to try the issues to be joined," and in the brief for complainant Whitson, and also in the brief for defendants Maxwell and Hudson, it is stated that the case was tried by the Chancellor "sitting as a jury."

As we view the record, after a careful examination thereof, in connection with the assignments of error and briefs, the determinative question arising on the appeal of complainant Whitson is, whether the Chancellor erred in holding that there was no consideration for the execution, by defendant Maxwell, of the written instrument purporting to be a guaranty set forth in the Chancellor's findings hereinbefore copied.

We concur in the finding of the Chancellor to the effect that the terms of the contract between Whitson and Maxwell for the sale and purchase of Whitson's interest in the Putnam Motor Company had been agreed upon and the sale consummated on the day preceding that on which Maxwell signed the aforesaid written instrument, and the sale was thus completed in parol, and without any agreement or understanding or proposal that it should be embodied in or evidenced by a written instrument.

The written instrument signed by Maxwell did not bind, or purport to bind, complainant Whitson to do or refrain from doing anything which he had not already bound himself to do or refrain from doing by the terms of the parol contract made on the preceding day; or to state the proposition in different words, the legal obligations of Whitson to Maxwell were precisely the same before the execution of the written instrument as afterwards.

"The performance of an existing legal obligation, without more, by one person affords no consideration in law for an original undertaking by another person." Hanks & McGuire v. Barron Bros., 95 Tenn., 275, 279, 32 S. W., 195.

We are of the opinion, and find, that there was no consideration passing from Whitson to Maxwell, or to Hudson, for Maxwell's execution of the said written instrument dated November 14th, and it was therefore, not binding on Maxwell.

"Since every simple executory contract must be supported by a consideration and its absence renders the contract or promise a nudum pactum and void, a contract unsupported by a consideration is unenforcible." 1 Elliott on Contracts, sec. 253.

The liabilities of the Putnam Motor Company assumed by Maxwell were limited to those disclosed by the "list" furnished to him by Whitson, and the note in suit was not included. Therefore, the Chancellor did not err in dismissing complainant's bill against defendant Maxwell, and complainant's assignments of error are overruled.

The learned Chancellor seemed to be of the opinion, as we interpret his findings, that defendant Hudson, by his act of buying (through

Maxwell) the interest of Whitson in the partnership theretofore conducted under the name of Putnam Motor Company, ipso facto became liable for all pre-existing debts and liabilities of the Putnam Motor Company. In this, we think the learned Chancellor fell into error.

"In the absence of evidence of the contrary, express or implied, by which he assumes the burden, one who becomes a member of an existing firm does not thereby render himself liable for its existing obligations. The general rule of non-liability is applicable. to the purchaser of a partners share in the partnership." 47 C. J., page 1028, sec. 587.

The rule in Tennessee is in accord with the above quoted text from Corpus Juris. Piano Co. v. Bernard, 2 Lea, 358-360. See also, 20 R. C. L., page 985, sec. 219; and an extended Annotation in 45 A. L. R., page 1246, et seq., where numerous cases are collated as supporting the rule above stated.

Hudson made no contract with respect to the assumption of the pre-existing debts of the Putnam Motor Company, except that made through Maxwell, and, as we have held, Maxwell did not agree to assume any liability on the note in suit. It was, therefore, error to render judgment against Hudson in this suit for any sum, or for costs.

It results that the decree of the chancery court dismissing complainant's bill as against defendant Maxwell is affirmed, and the decree awarding judgment against defendant Hudson is reversed, and complainant's bill, as against Hudson, is dismissed.

The costs of the chancery court will be adjudged against complainant Whitson and his surety on the prosecution bond below, and the costs of the appeal will be adjudged against complainant Whitson and the surety on his appeal bond.

Crownover and DeWitt JJ., concur.